IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| GREAT AMERICAN ASSURANCE COMPANY, | ) | CV 09-113-M-DWM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| DISCOVER PROPERTY AND CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I. Introduction

This case involves a dispute between two insurance companies, Great American Assurance Company ("Great American") and Discover Property and Casualty Insurance Company ("Discover"), as to which insurer's policy provides primary coverage for liability arising from a fatal automobile accident in Texas. Great American brings this action against Discover seeking a declaratory

judgment that Great American's policy does not cover the loss, or in the alternative, that any coverage under Great American's policy is secondary to Discover's policy. Great American also seeks indemnity or contribution from Discover for all payments by Great American on behalf of the insured, as well as its attorney's fees and costs in this action.

Discover filed a counterclaim requesting a judicial determination that Great American's policy is primary, and that Great American is obligated to reimburse Discover for fees and costs incurred in defending the underlying litigation. The matter is set for a bench trial on May 23, 2011, and the parties have filed cross motions for summary judgment. There is also a pending motion in limine in which Discover seeks to exclude the testimony of Gary Zadick, Great American's insurance law expert. Because this is a coverage dispute governed by state law, I decline to exercise jurisdiction. When the federal action was filed there was a pending parallel state case. Furthermore, given the unsettled state of Montana law, and the timing of the federal suit, abstention is warranted to discourage forum shopping.

## II. Factual Background

Gerald Jones drove as a trucker for Sammons Trucking from 2003 to October 2009. Sammons is a Missoula-based trucking company. On January 16, 2008, Jones was driving his tractor and attached flatbed trailer in Texas when he

collided with a pick-up truck driven by James Volk, killing Volk. At the time of the accident Jones, a resident of Bonham, Texas, was "deadheading," the trucking industry term for driving a tractor and trailer without a load. The tractor Jones was driving bore Sammons' name and logo, and Jones was in the process of purchasing the tractor (over time) from Sammons pursuant to a "Contract for Equipment Purchase." The week before the accident, Jones was dispatched from his home in Bonham, Texas, to Norman, Oklahoma to pick up a load for Sammons. After hauling that load to Stockton, California, Jones picked up a second load in Union City, California, and carried it to its drop-off point in Avondale, Arizona. Jones spent several days in Arizona before returning home to Bonham, Texas without a load. It was on the drive from Arizona to Bonham, Texas that the accident in question took place.

There are three insurance policies at the heart of this dispute. One policy, issued by Plaintiff Great American, is a non-trucking or "bobtail" policy intended to cover Jones for losses suffered while the tractor is used other than in the business of trucking. The parties dispute whether the Great American policy also covered Sammons as an insured. Defendant Discover had issued two policies, one primary and one excess, which insured Sammons' trucking equipment for losses incurred in the business of trucking. Each of the three policies carries a policy limit of one million dollars.

Jones and Sammons were sued in Texas state court by the estate and survivors of James Volk (the "Texas case"). Discover defended both Jones and Sammons in the Texas case for 16 months, before tendering the defense of the case against Jones and Sammons to Great American. Discover made the tender to Great American based on its view that Great American's policy was the primary coverage for the loss resulting from the accident in Texas. Great American chose not to defend Jones or Sammons in response to the tender, and Discover continued to defend both for several more months until the claims against Jones were settled. Settlement occurred when Great American agreed to pay $999,999.99 on behalf of Jones to the plaintiffs in the Texas case. Great American filed this declaratory judgment action the same day, and claims its only reason for paying the settlement was to avoid exposure to a bad faith claim. Soon after the settlement of the claims against Jones, Discover paid the Texas plaintiffs $800,000 to settle the remaining claims against Sammons.

Great American now seeks to be indemnified by Discover for the settlement proceeds it paid on behalf of Jones, arguing that Discover's policies are primary and Great American's policy, if it applies at all, is excess coverage. Discover has counterclaimed seeking to be reimbursed for the cost of defending Jones in the Texas case from the date of the tender to Great American until the date of settlement.

# III. Analysis

## A.    Declaratory Judgment Act

Although the parties are diverse, the Court has the discretion to choose whether to exercise jurisdiction because both the complaint and counterclaim seek declaratory relief.  Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), a district court has discretion to determine whether consideration of the action is appropriate.  Government Employees Insurance Company v. Dizol, 133 F.3d 1220, 1223 (9th Cir. 1998).[1]  In Dizol, the Ninth Circuit held that where no party has raised the issue of the district court's discretion to hear a declaratory judgment action, the court is not required to address the question sua sponte or to make findings concerning the exercise of its discretion.  Id. at 1227.  Neither party questions the Court's exercise of jurisdiction in this case, but I am free to consider jurisdiction sua sponte.[2]  The court in Dizol made clear that while sua sponte consideration is no longer required, it remains the favored approach: "Of course, the preferable practice is for the district court expressly to consider whether a

_____

[1]Of course, a case seeking declaratory relief must also present an actual case or controversy and meet statutory jurisdictional prerequisites.  Dizol, 133 F.3d at 1222-23.  Here, the dispute between two insurers over the duties imposed by insurance contracts presents a case or controversy, and the court has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds the jurisdictional minimum.

[2]Although it has not contested this Court's jurisdiction, Discover accuses Great American of "fil[ing] this suit in Montana for the precise purpose of avoiding a Texas Supreme Court decision that emasculates Great American's case."  Doc. No. 49 at 7.

properly filed declaratory judgment action should be entertained and to record its reasons for doing so." 133 F.3d at 1226. I believe this case presents an instance in which the court should decline to exercise jurisdiction.

The Declaratory Judgment Act is "deliberately cast in terms of permissive, rather than mandatory, authority. The Act gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." <u>Dizol</u>, 133 F.3d at 1223 (citations, internal quotation marks omitted). A court may not choose to decline jurisdiction arbitrarily, and there is no presumption is favor of abstention in declaratory judgment actions generally or in insurance cases specifically. <u>Id.</u> at 1225. If a declaratory judgment action is joined with other, non-discretionary claims (e.g., bad faith, breach of fiduciary duty, or breach of contract), the trial court should, as a general rule, assume jurisdiction over the discretionary claims as well. <u>Id.</u> at 1225. The exercise of the court's discretion must adhere to principles of comity, judicial economy, and federalism, and should be guided by the factors set forth in <u>Brillhart v. Excess Ins. Co. of America</u>, 316 U.S. 491 (1942). Under <u>Brillhart</u>,

> The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation. If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court.

Dizol, 133 F.3d at 1225.[3]

Before proceeding to application of the Brillhart factors, it should first be

noted that there are no non-discretionary claims in the Amended Complaint that

would warrant retention of jurisdiction. Although Great American and Discover

each seek an award of money damages, their claims are viable only if they prevail

in their claims for declaratory relief on the issue of coverage. A court does not

forfeit its discretionary power where a request for monetary relief is wholly

dependent on a favorable ruling on the claim for declaratory relief. Kolstad v.

Trinity Universal Ins. Co. of Kansas, 12 F.Supp.2d 1101, 1103-04 (quoting

Golden Eagle Ins. Co. v. Travelers Cos., 103 F.3d 750, 755 (9th Cir. 1996)

(*overruled in part by* Dizol on the issue of sua sponte review)).

Turning to the Brillhart factors, this case presents insurance coverage

questions that are strictly the province of state law. Regulation of insurance

---

[3]Although Brillhart remains the "philosophic touchstone" for the exercise of a district
court's jurisdiction under the Declaratory Judgment Act, Dizol, 133 F.3d at 1225, the Brillhart
factors are not exhaustive. A court may also consider

> (1) "whether the declaratory action will settle all aspects of the controversy"; (2)
> whether it "will serve a useful purpose in clarifying the legal relations at issue";
> (3) whether it "is being sought merely for the purposes of procedural fencing or to
> obtain a 'res judicata' advantage"; (4) whether "the use of a declaratory action will
> result in the entanglement between federal and state court systems"; (5)
> convenience of the parties and "the availability and relative convenience of other
> remedies."

Kolstad v. Trinity Universal Ins. Co. of Kansas, 12 F.Supp.2d 1101, 1105 n.1 (quoting Dizol,
133 F.3d at 1225 n.5).

companies is an authority conferred to the states as a matter of federal law. See 15

U.S.C. § 1012(a) ("The business of insurance ... shall be subject to the laws of the

several States which relate to the regulation or taxation of such business."). In the

insurance coverage context, comity concerns are "particularly weighty," such that

jurisdiction is found not warranted in "the general run of insurance coverage

cases." Employers Reinsurance Co. v. Karussos, 65 F.3d 796, 799 (9th Cir. 1995).

Where there is a parallel state court proceeding pending, courts should generally

abstain from exercising jurisdiction. The Ninth Circuit's approach is stated in

American National Fire Ins. Co. v. Hungerford, 53 F.3d 1012 (9th Cir. 1995):

> [C]ourts should generally decline to assert jurisdiction in insurance
> coverage and other declaratory relief actions presenting only issues of
> state law during the pendency of parallel proceedings in state court
> unless there are circumstances present to warrant an exception to that
> rule.

Hungerford, 53 F.3d at 1019 (internal quotation marks omitted) (*overruled in part*

*by* Dizol on the issue of sua sponte review). The Hungerford rule applies so long

as the state court proceedings "arise from the same factual circumstances" as the

claim for declaratory relief. Golden Eagle, 103 F.3d at 755. Moreover, with

respect to parallel state litigation, "the propriety of the district court's assumption

of jurisdiction is judged as of the time of filing." Karussos, 65 F.3d at 800.

The Texas litigation constitutes a parallel state court proceeding under the

Hungerford rule because it was pending as of the date of filing of this action and it

arises from the same factual circumstances, i.e., the accident in Texas.  See Doc.

No. 34-4.  Accordingly, declination to exercise jurisdiction is proper unless there

are circumstances present to warrant an exception to the general rule.  No such

circumstances are present here.

Karussos presented a coverage dispute in which one insurance company

sought a declaratory judgment that it had no duty to defend or indemnify the

insured and that a second insurer had issued the policy providing primary

coverage.  65 F.3d at 798.  There was an underlying state court action pending

against the insured at the time of the filing in federal court.  Id.  The district court

resolved the coverage issue on summary judgment, and on appeal the panel not

only vacated the summary judgment ruling but held that the district court abused

its discretion in assuming jurisdiction over the case.  Id. at 800.[4]  The Karussos

court noted that request for declaratory relief "raise[d] factual questions similar to

those before the state court," and that a declaratory determination as to indemnity

"could be made only after considering issues involved in the state court

proceedings."  Id. at 800, n.2.  The court rejected the argument that it should

exercise jurisdiction because the state court proceeding had concluded, stating that

the relevant inquiry is whether there is a pending state proceeding at the time of

---

[4]While such sua sponte appellate examination of jurisdiction would no longer be
appropriate after Dizol, the Karussos court's analysis remains instructive for this Court's
consideration of its jurisdiction in the first instance.

filing.  Id. at 800.  The panel was also unpersuaded that it should retain jurisdiction because the plaintiff insurer's request for monetary relief constituted a non-discretionary claim, stating, "If a party could avoid Hungerford's rule by the simple expedient of including such a request in its complaint, there would be little if anything left of that rule."  Karussos, 65 F.3d at 801.  The court concluded that there were "no facts and circumstances present ... that would justify the district court's exercising its discretion to depart from" the Hungerford rule.  Id.

Karussos is directly on point.  This case is a dispute between two insurers filed during the pendency of a related and parallel underlying action against the insured in state court arising from the same set of facts.  The resolution of the coverage dispute between Great American and Discover must be judged according to state law, and there are no independent non-discretionary state claims.  There are no exceptional circumstances that warrant departure from the Hungerford rule.

Although strict application of Karussos compels dismissal, the Court is not necessarily required to decline to exercise jurisdiction.  But there is another consideration, not present in Karussos, that makes the case for abstention here even stronger.  If I retain jurisdiction the first task in resolving the case on summary judgment would be to determine whether the coverage dispute is governed by Montana law or Texas law.

What follows is a diversion into the current state of Montana's choice of

law rules, which is necessary to illustrate a point that bears on the Court's decision whether to retain jurisdiction: this case not only calls on the Court to decide state law matters, but it would require the Court to address one of those matters–choice of law–without the benefit of clear guidance from the Montana Supreme Court.

The court has subject matter jurisdiction over this case due to the diversity of the parties under 28 U.S.C. § 1332, and therefore must apply state substantive law to the state law claims. <u>Mason and Dixon Intermodal, Inc. v. Lapmaster Intern. LLC</u>, 632 F.3d 1056, 1060 (9th Cir. 2011). The parties disagree as to which state's substantive law should apply. Great American contends Montana law applies, while Discover says the claims should be decided under Texas law. A federal court sitting in diversity must apply the choice-of-law rules of the forum state, in this case Montana. <u>Johnson v. Wells Fargo Home Mortg., Inc.</u>, --- F.3d ----, 2011 WL 505016 at *14 n.16 (9th Cir. Feb. 15, 2011). Recent Montana Supreme Court decisions render the application of Montana's choice-of-law rules no easy task.

Montana's approach to choice-of-law questions in insurance disputes was fairly settled before the Montana Supreme Court's decision in <u>Tucker v. Farmers Ins. Exch.</u>, 215 P.3d 1 (Mont. 2009). On the eve of <u>Tucker</u>, choice-of-law questions in cases without a contractual choice-of-law provision were unambiguously governed by the approach exemplified in <u>Mitchell v. State Farm</u>

Ins. Co., 68 P.3d 703 (Mont. 2003).  In Mitchell, an insured injured in a car accident in Montana sought a declaratory judgment that he was entitled to underinsured motorist coverage under his parents' California auto insurance policies, which did not contain a choice-of-law provision.  Id. at 705-06.  Judge Ed McLean applied California law and concluded that the insured was not entitled to underinsured motorist coverage.  Id. at 707.  Justice Terry Trieweiler writing for the Montana Supreme Court reversed on appeal, holding that the proper outcome under Montana's choice-of-law rules was for Montana law to govern the dispute.

Relying on its earlier decisions in Kemp v. Allstate Ins. Co., 601 P.2d 20 (Mont. 1979), and  Phillips v. General Motors Corp., 995 P.2d 1002 (Mont. 2000), the court in Mitchell began with the proposition that conflicts of law are to be resolved according to a "careful, step-by-step" application of the Restatement (Second) of Conflict of Laws.  68 P.3d at 708.  The Mitchell court first looked to § 188(1) of the Restatement, which provides:

> § 188. Law Governing in Absence of Effective Choice of Law by the Parties
>
> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

Restatement (Second) of Conflict of Laws § 188(1).

Section 6 of the Restatement states in part:

§ 6. Choice-of-Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include...

Restatement (Second) of Conflict of Laws § 6.

The <u>Mitchell</u> court's first step in applying the Restatement was to ascertain whether Montana had a statute governing choice of law as contemplated by § 6(1). <u>Mitchell</u>, 68 P.3d at 708. The court held Montana had such a directive in the form of Mont. Code Ann. § 28-3-102, which states, "A contract is to be interpreted according to the law and usage of the place where it is to be performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." The court noted that the California policies in question required the insurance company to perform its duties under the contract anywhere in the United States, and therefore concluded that "Montana was an anticipated place of performance." <u>Mitchell</u>, 68 P.3d at 708. Because Montana was an anticipated place of performance, the court held pursuant to Mont. Code Ann. § 28-3-102 that Montana law would apply if Montana was the actual place of performance. <u>Id.</u>

The <u>Mitchell</u> court relied on <u>Kemp</u> to conclude that Montana was the place of performance because it was where the loss occurred and where the insured

obtained judgment:

> We have held that where an insurance contract designates the place of performance to be any state where a claim arises, performance occurs where the insured obtains judgment. <u>Kemp</u>, 601 P.2d at 23. It logically follows, that the place of performance is also the place where an insured is entitled to receive benefits, has incurred accident related expenses, or is entitled to judgment....
>
> Montana is the place of performance pursuant to Mitchell's policies because Mitchell was working and living in Montana at the time of the accident; the underinsured tortfeasor's vehicle was insured in Montana; Mitchell's medical expenses were incurred in Montana; Mitchell settled with the Haas' insurers for the policy limit giving rise to the underinsured motorist claim in Montana; and judgment concerning the accident will be rendered and paid in Montana.

<u>Mitchell</u>, 68 P.3d at 709.

As recently as 2008, the Montana Supreme Court reaffirmed <u>Mitchell</u>'s command to apply Mont Code Ann. § 28-3-102 in insurance cases and look to the place of performance when deciding which jurisdiction's law applies in the absence of a choice-of-law provision. <u>See</u> <u>Wamsley v. Nodak Mut. Ins. Co.</u>, 178 P.3d 102 (Mont. 2008). <u>Wamsley</u> involved an insurance coverage dispute arising from an auto accident in Montana in which the insureds, North Dakota residents covered by policies issued in North Dakota, were killed. 178 P.3d at 105-06. The Montana Supreme Court concluded that Montana law applied to the case, despite acknowledging that the insureds "had none of the Montana contacts that the Plaintiff had in <u>Mitchell</u>." <u>Id.</u> at 112. In holding that Montana was the place of performance regardless of the insureds' lack of Montana contacts, the <u>Wamsley</u>

court stated:

> Montana is where the accident occurred and the damages arose. It is the site of the personal injury action filed by the Estate, and the forum in which an order of judgment against Stanton, the Montana tortfeasor, has been rendered. Moreover, Nodak has already paid the Estate $200,000.00 in UIM claims submitted by the Estate's counsel in Montana. Therefore, we conclude the District Court did not err in holding that Montana law should apply to the stacking and coverage issues before us.

Wamsley, 178 P.3d at 113 (internal citation omitted). Notably, the court in Wamsley expressly rejected the insurer's argument for application of the factor-based approach in § 188(2) and § 193 of the Restatement (Second) of Conflict of Laws, stating, "The factor-based analysis described in the Restatement comes into play only after it has been determined that the contract does not designate a place of performance. If Montana is determined to be the place of performance, then no further analysis under the Restatement factors is required." 178 P.3d at 112.

Soon after Wamsley, the Montana Supreme Court decided Modroo v. Nationwide Mut. Fire Ins. Co., 191 P.3d 389 (Mont. 2008). Like Mitchell and Wamsley, Modroo presented an insurance coverage question, but in Modroo the insurance contract in question contained a choice-of-law provision stating that Ohio contract law would govern the interpretation of the policy. Modroo, 191 P.3d at 399. The plaintiff in Modroo argued the Ohio law chosen by the parties should not apply because it is contrary to Montana public policy, and the Montana Supreme Court, relying on § 187(2)(b) of the Restatement, set out the test for

deciding whether to follow the parties' choice of law:

> [W]e will not apply the law of the state chosen by the parties if three factors are met: (1) if, but for the choice-of-law provision, Montana law would apply under § 188 of the Restatement; (2) if Montana has a materially greater interest in the particular issue than the state chosen by the parties; and (3) if applying the state law chosen by the parties would contravene a fundamental policy of Montana.

Modroo, 191 P.3d at 400.

The Modroo court held that the first prong of the test had been met because under Mitchell, Montana is the place of performance and therefore Montana law would apply but for the choice of law provision. 191 P.3d at 401. The Modroo court then proceeded to the second prong of its test, but not before clarifying that Mitchell was still good law, and Mitchell's place-of-performance rule would have ended the inquiry in the absence of a choice-of-law provision in the contract.

> Under Montana law, the law of the place of performance governs a contract's interpretation unless the terms of the insurance contract provide otherwise. Mitchell, ¶ 20. When insurance policies contain no choice-of-law provisions, we need not consider whether Montana possesses a materially greater interest in the contract issue than another state. Restatement (Second) of Conflict of Laws § 188. In Mitchell, the insurance policies did not include a choice-of-law provision. Thus, once we determined that Montana constituted the place of performance, we next considered whether Mitchell was entitled to recover UIM damages under Montana law, without analyzing whether Montana had a materially greater interest than California. Mitchell, ¶¶ 22-24; accord Wamsley v. Nodak Mut. Ins. Co., 2008 MT 56, ¶¶ 42-44, 341 Mont. 467, ¶¶ 42-44, 178 P.3d 102, ¶¶ 42-44. In this case, however, in light of the parties' choice-of-law provision specifying that Ohio law governs the interpretation of the personal auto policy, we must determine whether Montana has a materially greater interest in the issue than Ohio. If we determine that

Montana has a materially greater interest, we then analyze whether applying Ohio law would violate Montana public policy.[5]

Modroo, 191 P.3d at 401-02.

Less than a year after Modroo, Montana's choice-of-law jurisprudence took a confusing turn in Tucker. Tucker presented an insurance coverage dispute similar in its facts to Mitchell and Wamsley; the insured was killed in a car accident in Montana, but was an out-of-state resident insured by a policy issued in her home state (Idaho), and the insurance contract at issue did not contain a choice-of-law provision. Tucker, 215 P.3d at 2-3. In deciding whether to apply Montana or Idaho law, the Tucker court began by citing Mitchell for the proposition that "[t]he law of the place of performance governs a contract's interpretation unless the terms of the insurance contract provide otherwise." Tucker, 215 P.3d at 7.

Straightforward application of Mitchell's place-of-performance rule would have quickly resolved the choice-of-law question in favor of Montana, as it was the site of the accident and the state in which the insured obtained judgment. But rather than deciding the matter based on the place of performance, the Tucker court proceeded to apply the factor-based approach § 188(2) of the Restatement

---

[5]The court in Modroo went on to conclude that Montana had no materially greater interest than Ohio, and therefore applied Ohio contract law without taking up the third prong of the test, i.e., whether Ohio law conflicts with Montana public policy. 191 P.3d at 402.

(Second) of Conflict of Laws.  215 P.3d at 7 (citing <u>Modroo</u>, 191 P.3d at ¶ 55).

The <u>Tucker</u> court's citation to <u>Modroo</u> is curious, because in <u>Modroo</u> the court's

reliance on § 188(2) of the Restatement was premised entirely on the presence of a

contractual choice-of-law provision.  <u>Modroo</u>, 191 P.3d at 401.  In fact, the

<u>Modroo</u> court explicitly stated that had there been no choice-of-law provision in

the contract, the <u>Mitchell</u> place-of-performance rule would have applied under §

6(1) of the Restatement and Mont. Code Ann. § 28-3-102.  <u>Id.</u>  The <u>Tucker</u> court

failed to consider Restatement § 6(1), seemingly abandoning the "careful, step-by-

step" application of the Restatement endorsed by the court in <u>Phillips</u>, <u>Mitchell</u>,

<u>Wamsley</u> and <u>Modroo</u>.

Having settled on the factor-based test under Restatement § 188(2),[6] the

<u>Tucker</u> court then concluded that Idaho law should govern the interpretation of the

insurance contract:

> We are left to resolve a dispute that centers on the interpretation of
> the Idaho insurance policies issued to Idaho residents by corporations
> doing business in Idaho. Montana's interest in this dispute derives
> solely from its status as the place of performance. This fact does not
> create a materially greater interest in this dispute among Idaho parties
> that would warrant applying Montana law.

215 P.3d at 8.

---

[6]The contacts to be considered in § 188(2) are "(a) the place of contracting; (b) the place
of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter
of the contract; and (e) the domicil, residence, nationality, place of incorporation and place of
business of the parties."  Restatement (Second) of Conflict of Laws § 188(2).

In discounting the importance of the place of performance in its analysis,

the Tucker court stated, "The place of performance bears little weight in choice-of-

law determinations, however, when the place of performance is uncertain or

unknown at the time of contracting." 215 P.3d at 8. To support this proposition,

the court cited Paragraph 62 of Modroo as well as Comment (e) to Restatement §

188. Paragraph 62 of the Modroo opinion dealt with application of § 188(2),

which the court reached only *after* it had determined that the parties' contractual

choice of law rendered the Mitchell place-of-performance rule inapplicable.

Modroo, 191 P.3d at 402. There is a paucity of support in Modroo for the

abandonment of Restatement §6(1) and the place-of-performance rule in cases

with no contractual choice of law. The Modroo court was crystal clear in its

approval of Mitchell: "We conclude that, under Mitchell and § 28-3-102, MCA,

Montana constitutes the place of performance for the personal auto policy. Thus,

setting aside the parties' contractual choice-of-law provision, Montana law would

apply under § 188 of the Restatement." 191 P.3d at 401. Tucker seemingly

misapplies the reasoning in Modroo and it presents a different road, one less

traveled, than the earlier line of cases.

Like the insurance policies in Mitchell, the policies at issue in this case all

contemplate the state in which the loss occurred (in this case Texas) as a potential

place of performance. The "Truckers Coverage Form" of the Discover Insurance

Policy describes the "coverage territory" to include "The United States of America," Doc. No. 32-12 at 37, and the Discover Excess Policy incorporates the coverage terms of the underlying Discover Insurance Policy. Doc. No. 35-1 at 9. The Great American policy's coverage area includes "the United States of America." Doc. No. 37-2 at 1. The accident occurred in Texas, the underlying tort case was filed in Texas, and the insurers paid settlements under the contracts in Texas. There is no doubt that under Mitchell, Texas law would apply to this dispute.

However, Tucker is also directly applicable to the facts of this case, and although it is a closer question, it is likely that under Tucker Montana law would apply. The insurance policies were negotiated and issued in Montana by insurance companies doing business in Montana. Sammons is a Montana business, and while Jones is a Texas resident, the Great American policy under which he was insured was procured on his behalf by Sammons in Montana. Tucker, 215 P.3d at 8. Under Tucker, location of the subject matter is irrelevant and the place of performance (Texas) "bears little weight." Id. Apart from Jones' Texas residency, all other factors favor Montana law.

Although the Montana Supreme Court has not expressly overruled Mitchell, and in fact cited Mitchell favorably in Tucker, it is most difficult to reconcile Tucker and Mitchell in this case. One commentator has called the Tucker opinion

"shocking."  Greg Munro, *Auto Policy Conflicts of Law in Montana*, Trial Trends Autumn 2010 21, 34.  Professor Munro gives an apt description of the confusion created by Tucker:

> Perhaps most stunning is the court's application of this process in Tucker in 2009, a case in which the policy contained no choice-of-law provision.  Application of the Restatement there previously dictated looking to our state's statutory directive, Mont. Code Ann. § 28-3-102, which would mean applying the place of performance standard.  The court has never overturned Kemp, Mitchell, or Kilmer.  Why would it be analyzing "materially greater interest" in a case where there is no choice of law provision?
>
> The Montana Supreme Court has a tradition of protecting auto policy insureds by clearly identifying policy provisions that are repugnant as against public policy.  The end result of the Modroo, Tenas, and Tucker cases in the last two years is a confused abandonment of Montana's materially greater interest in its public policy protection.... This interest needs to be inserted back into the decisions and not "conflated" into a reversal of thirty years of well-reasoned precedent without expressly overruling that precedent.  Until 2008, Montana law has been quite clear in the area of law applicable to out-of-state policies.  Ignoring the principles established in such cases as Kemp, Youngblood, Casarotto, and Mitchell introduces an unpredictability in the decisions.

Id. at 35-36.

There is only one reported decision in which a court has confronted Tucker's conflict with Mitchell.  In Kominsky v. Dave Smith Chevrolet Oldsmobile Pontiac Cadillac, Inc., 2010 WL 4920903 (D. Mont. Nov. 29, 2010), United States Magistrate Judge Carolyn S. Ostby considered whether Montana law or Idaho law should apply to a contract dispute between an Idaho car dealer and a

Montana purchaser. There was no contractual choice-of-law provision. Id. at *3. After citing Tucker for the proposition that § 188 of the Restatement governs, Judge Ostby analyzed the question under Mont. Code Ann. § 28-3-102 and the place of performance rule as required by Restatement § 6(1). Id. at *2-*3. Noting that the contracts were negotiated and signed in Idaho, and that the buyer took possession of the truck in Idaho, Judge Ostby concluded that Idaho was the place of performance and therefore Idaho law governed the interpretation of the contracts. Id. at *3.

Determination of the proper choice-of-law analysis was less problematic in Kominsky than it is in this case, because in Kominsky Idaho law would have been the proper choice of law regardless of whether the court applied the factor-based approach of Restatement § 188(2) or the place-of-performance rule under Restatement § 6(1). Nevertheless, Judge Ostby declined to directly address the conflict. She ably maneuvered her reasoning so that Tucker was non-essential to the outcome. Tucker cannot be so deftly dealt with here because it is directly on point and is the most recent Montana Supreme Court pronouncement on conflicts of law. Likewise I cannot simply disregard Mitchell and the legion of other cases standing uniformly for the application of Restatement § 6(1) where the parties have failed to agree on a choice of law, particularly where those cases have not been overruled and continue to be cited favorably. The difference between this

case and Kominsky is that Judge Ostby, with tort and contract claims before her, had no choice but to resort to conjecture to resolve the choice-of-law question. Here, whether to exercise jurisdiction over this case is within the Court's discretion. The unsettled state of Montana law in this area counsels in favor of declining jurisdiction.

In fact, the current state of Montana's conflicts of law jurisprudence, and the timing of Tucker, raise the specter of another of the Brillhart factors, and that is the need to discourage forum shopping. From Great American's perspective, the application of Montana's substantive law is preferable to that of Texas.[7] Before Tucker, there would have been no incentive for Great American to file this action in federal district court in Montana, because Montana's choice-of-law rule would clearly have called for Texas law to apply. On July 21, 2009, the Tucker opinion was issued, casting doubt on the continued validity of Mitchell and rendering Montana a more appealing venue for Great American. Texas has no state statute that would be applicable to these insurance policies under Restatement § 6(1), and so a Texas court would apply the factor-based approach of Restatement § 188(2).

---

[7]Although it would require more careful research before a definitive recommendation can be made, it appears quite possible that the application of Texas law would be fatal to Great American's claims. See Mid-Continent Ins. Co. v. Liberty Mutual Ins. Co., 236 S.W.3d 765 (Tex. 2007) (holding no direct contribution action exists under Texas law between co-insurers or between an excess insurer and a primary insurer where the policies contain other insurance clauses).

<u>Reddy Ice Corp. v. Travelers Lloyds Ins. Co.</u>, 145 S.W.3d 337 (Tex. App. 2004).[8]

Texas would therefore have been, from a choice-of-law standpoint, the preferred venue for Great American prior to the <u>Tucker</u> ruling. Great American filed this action on August 10, 2009, three weeks after <u>Tucker</u> was issued. Although this is certainly not conclusive evidence of forum shopping, the timing of Great American's filing of this suit in light of the perceived advantageous change in Montana law is worth noting.

The existence of a novel issue of state law prompted this Court to decline to exercise jurisdiction over an insured's action seeking declaratory relief against an insurer in <u>Kolstad</u>. The issue in <u>Kolstad</u> was whether an uninsured motorist policy covers emotional damages. 12 F.Supp.2d at 1105. The case was removed from state court, and in granting the plaintiff's motion to remand, the Court stated:

> [I]nsurance is an area principally regulated by the state where "comity concerns" are "particularly weighty." Karussos, 65 F.3d at 799. Trinity has a forum available in state court for the resolution of the issue. Finally, Trinity has a state court remedy in the declaratory action originally filed in state court. Accordingly, in the light of the above discussion and the case law reviewed therein, I find that federal jurisdiction is not appropriate in this declaratory action.

<u>Id.</u>

---

[8]The applicable Texas statute directs that Texas law shall apply if "(1) the insurance proceeds are payable to a Texas citizen or inhabitant; (2) the policy is issued by an insurer doing business in Texas; and (3) the policy is issued in the course of the insurer's business in Texas." Reddy Ice, 145 S.W.3d at 341; Tex. Ins. Code Ann. art. 21.42. Those conditions are not met here because it is unclear whether Great American and Discover do business in Texas, and the policies in question were not issued in the course of the insurers' business in Texas.

While the confusion wrought by <u>Tucker</u> does not technically present a novel issue of state law, the situation is largely analogous to <u>Kolstad</u>. The first task required in this case would be to apply Montana law in an area where the law is unsettled and the state's policy concerns relative to the regulation of the insurance industry are paramount. Moreover, in <u>Kolstad</u>, there was no parallel state court action; the litigation removed to this Court was the only case. 12 F.Supp.2d at 1104. Here the existence of a parallel state court proceeding in Texas at the time of filing invokes the <u>Hungerford</u> rule and provides an even stronger case for abstention.

This is an insurance coverage dispute between two insurance companies, one based in Illinois and one based in Ohio, regarding an automobile accident and subsequent state court litigation occurring in Texas. The substantive law that resolves the dispute will be state law, and the determination of which state's law to follow requires the application of an unsettled area of Montana law if jurisdiction is kept here. There was parallel litigation in Texas at the time this case was filed, and the state courts of both Texas and Montana provide forums for the resolution the dispute between Great American and Discover. Under these circumstances, it is proper to decline to exercise jurisdiction and dismiss the case.

## IV. Conclusion

To paraphrase Robert Frost:

I shall be telling this with a sigh somewhere ages and ages hence: Two lines of cases diverged in the Montana Supreme Court and I,

I took the one less traveled by, AND that has made all the difference because the case is DISMISSED.

I decline to exercise jurisdiction over the state law claims for declaratory relief at issue in this case. The pending motions (dkt ##27, 42, 48, and 51) are DENIED as moot, and the Clerk of Court is directed to close the case.

Dated this 26th day of April, 2011.


_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT